D. Maimon Kirschenbaum
Lucas C. Buzzard
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**DONNA HALPIN,**

          **Plaintiff,**

     v.

**ROYAL CARTING OF DUTCHESS COUNTY, INC. and EVELYN PANICHI,**

          **Defendants.**
-----------------------------------------------------------------x

**COMPLAINT**

**CASE NO.:**

**DEMAND FOR JURY TRIAL**

Plaintiff Donna Halpin alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

3. Defendant Royal Carting of Dutchess County, Inc. ("Defendant" or the "Royal Carting") is a corporation organized under the laws of the State of New York.

4. Defendant provides residential garbage collection services, commercial waste removal services, and recycling services to communities in the Hudson Valley, New York. Its administrative offices are located in Hopewell Junction, New York.

5. The founder and owner of Royal Carting is Emil Panichi.

6. Royal Carting is currently operated by Emil Panichi's daughters, Elisa Popovich and Defendant Evelyn Panichi.

7. Defendant Evelyn Panichi manages Royal Carting's operations. She also serves as Royal Carting's human resources officer. She has authority to hire and fire employees.

8. Plaintiff Donna Halpin is 68-year-old woman who was formerly employed by Royal Carting as a secretary in its administrative offices.

## FACTS

9. Plaintiff was employed by Royal Carting as a secretary for approximately twenty-six years, since 1995.

10. As a secretary, Plaintiff's major job duties included: (1) data entry, which involved entering information for new accounts, cancelling accounts, and updating account information; (2) answering telephones and responding to customer inquiries; and (3) preparing weekly reports tracking the gains/losses on residential accounts.

11. Until February 2021, Plaintiff was employed full-time and worked from a desk on the second floor of Royal Carting's administrative offices, where all other secretaries were also located.

12. In approximately 2018, Betty Guarino became Royal Carting's office manager.

13. Ms. Guarino was verbally abusive towards Plaintiff.

14. In approximately 2019, Plaintiff had to ask Ms. Guarino a question and so went to her desk. In response to her question, Ms. Guarino sneered at Plaintiff and told her to go back to her seat.

15. Several minutes later, when Plaintiff had to deliver a document to the desk of another employee, Ms. Guarino walked into the room and asked Plaintiff if she had "attention deficit disorder."

16. In April 2020, Ms. Guarino rudely ordered Plaintiff to "sit in your chair" and told Plaintiff that she did not want to "hear a peep" out of Plaintiff's mouth.

17. Plaintiff reported Ms. Guarino's behavior to Defendant Panichi.

18. In early 2020, Mr. Panichi's daughters, Elisa Popovich and Defendant Evelyn Panichi, were put in charge of operating the business.

19. In January 2021, Defendants hired a woman named Vanessa Doughty as a secretary. Ms. Doughty is significantly younger than Plaintiff. Plaintiff estimates that Ms. Doughty is in her 30s.

20. After Ms. Doughty was hired, Defendants began training Ms. Doughty how to perform Plaintiff's job duties.

21. On February 3, 2021, Plaintiff returned to her desk from lunch to find that numerous documents she had been working on were missing.

22. Plaintiff asked Ms. Guarino about her belongings and was told that Ms. Guarino had given the documents to another secretary, Ms. Guarino's daughter, to "check."

23. Shortly thereafter, Plaintiff spoke with Defendant Panichi about the missing documents. Defendant Panichi told Plaintiff that "we had noticed" that Plaintiff's work was "not up to par" and that and Plaintiff seemed "tired."

24. Defendant Panichi told Plaintiff that, because of this, Plaintiff would thereafter be offered only a part-time schedule, under which Plaintiff would work from 9:00 a.m. to 1:00 p.m. Plaintiff understood that she would lose her health insurance and paid vacations/sick leave under this schedule because, pursuant to Royal Carting policy, an employee had to work a minimum of 30 hours per week to receive health insurance, paid vacation, and paid sick leave.

25. In addition, Defendant Panichi informed Plaintiff that, under the new schedule, Plaintiff would have to give up the desk she had worked at for years and relocate to the first floor of the building.

26. Before this conversation, Plaintiff had not received any notice or evaluation informing her that her work was "not up to par." None of Plaintiff's supervisors had ever complained to Plaintiff about the quality of her work.

27. After being given the ultimatum about her new schedule, Plaintiff told Defendant Panichi that she would have to consider whether it would be possible for her to continue working with such reduced pay and benefits.

28. Plaintiff determined she could not financially afford to accept the lower hours as doing so would have: (1) required Plaintiff to accept a pay cut of approximately $500 per week; (2) resulted in the loss of Plaintiff's employer-provided health insurance; and (3) required Plaintiff to apply for and start paying her share of Medicare Part B and a prescription drug plan.

29. That evening, Plaintiff texted Defendant Panichi and told her that the "offer" to cut her hours and move downstairs was "not beneficial to [Plaintiff] at all" and that Plaintiff "wished

she had been told" that Defendants felt her work was not up to par "after working there for 25 years."

30. The next day, on February 4, 2021, Defendant Panichi called Plaintiff into a conference room to meet with her, Ms. Guarino, and Ms. Popovich.

31. Defendant Panichi told Plaintiff that she understood that Plaintiff was "not interested" in the reduced hours.

32. Plaintiff responded that she would "lose everything" and could not do her job under the reduced schedule because all the documents and information she needed were located on the second floor of the office.

33. Defendant Panichi responded that Plaintiff would not have to worry about that because her job duties would also be reduced—no longer would Plaintiff have any responsibility for data entry or preparing reports. Instead, her sole duties would be to answer the phones and transfer calls to other secretaries.

34. Defendant Panichi made clear to Plaintiff that her only option to remain employed at Royal Carting was to accept the reduced hours, reduced job duties, and the humiliating relocation to the first floor.

35. After Plaintiff reiterated that she would not be able to accept the financial burden of the reduced schedule, Defendant Panichi told Plaintiff, "well, that's ok." Defendant Panichi then informed Plaintiff that Defendants would pay out Plaintiff's earned vacation days, thus making clear that Plaintiff's employment at Royal Carting was over.

36. Plaintiff, who had never received a performance evaluation or any written feedback of her work, asked Defendant Panichi to give her any performance evaluations of her work showing how and why her work was "not up to par."

37. Defendants' employee handbook states that Royal Carting's policy is to provide employees formal and informal feedback about their job performance and to perform annual performance evaluations.

38. Defendant Panichi informed Plaintiff that, contrary to Company policy set forth in its employee manual, no such performance evaluations had been prepared for Plaintiff.

39. It is apparent from Defendants' hiring of a younger employee to perform Plaintiff's job duties, the baseless insinuation that Plaintiff's job performance was "not up to par" because she was "tired," Defendants' failure to record how Plaintiff's job performance was deficient in contravention of Royal Carting's own policies, the drastic cut to Plaintiff's hours, and the humiliating relocation of Plaintiff to the first floor away from all of her peers, that Defendants intended to push Plaintiff out of the company because of her age.

40. After her termination, Plaintiff learned from her former co-workers that Ms. Doughty had taken her desk and was performing all of Plaintiff's duties.

41. To be clear, before Defendants hired Ms. Doughty, there were no issues with Plaintiff's performance. The vague and undocumented assertion that Plaintiff's job performance was not "up to par" is completely baseless.

42. On August 30, 2021, more than 60 days prior to the filing of this Complaint, Plaintiff initiated a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"). A copy of Plaintiff's filed EEOC Charge is attached hereto as Exhibit A.

**FIRST CLAIM FOR RELIEF**
Age Discrimination in Employment Act ("ADEA"),
29 U.S.C. § 621, *et seq.* – Age Discrimination
-Against Defendant Royal Carting-

43. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

44. In violation of the ADEA, Defendant Royal Carting intentionally discriminated against Plaintiff because of her age by reducing her work hours and constructively discharging Plaintiff.

45. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damage, including, but not limited to loss of income, including past and future salary.

46. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer, substantial non-monetary damages, including but not limited to emotional distress, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

47. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

48. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**New York State Human Rights Law ("NYSHRL"),**
**N.Y. Exec. Law §§ 290 *et seq.* – Age Discrimination**
**-Against All Defendants-**

49. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

50. In violation of the NYSHRL, Defendants intentionally discriminated against Plaintiff on the basis of her age by reducing her work hours and constructively discharging Plaintiff.

51. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damage, including, but not limited to loss of income, including past and future salary.

52. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, substantial non-monetary damages, including but not limited to emotional distress, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

53. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

54. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

  A. An award of damages, according to proof, including compensatory damages, emotional distress damages, back pay, front pay, punitive damages, to be paid by Defendant;

  B. Penalties available under applicable laws;

  C. Costs of action incurred herein, including expert fees;

  D. Attorneys' fees;

  E. Pre-judgment and post-judgment interest, as provided by law; and

  F. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: New York, New York
   November 3, 2021

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: __s/Lucas C. Buzzard_____
Lucas C. Buzzard
D. Maimon Kirschenbaum
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiffs*

# EXHIBIT A

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [ ] FEPA  [X] EEOC | 520-2021-04531 |

_____ and EEOC
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Donna Halpin | (845) 243-8177 | 1/21/1953 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1782 South Rd., Lot 21, | Wappingers Falls, NY 12590 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Royal Carting of Dutchess County, Inc. | 15+ | (845) 896-6000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 409 Route 82, P.O. Box 1209, | Hopewell Junction, NY 12533 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Evelyn Panichi |  | (845) 896-6000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 409 Route 82, P.O. Box 1209, | Hopewell Junction, NY 12533 |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[ ] RETALIATION  [X] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: January 2021    Latest: Feb. 4, 2021

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see attached extra sheet.

---

I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Aug 10, 2021
Date

*Donna Halpin*
Donna Halpin (Aug 10, 2021 15:41 EDT)
Charging Party Signature
Donna Halpin

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Equal Employment Opportunity Commission
New York District Office
Received   8/30/2021

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| | |
|---|---|
| DONNA HALPIN,<br><br>Charging Party,<br><br>v.<br><br>ROYAL CARTING OF DUTCHESS COUNTY, INC. and EVELYN PANICHI,<br><br>Respondents. | EEOC Charge No: **520-2021-04531** |

**EEOC Charge – Extra Sheet**

Respondent Royal Carting of Dutchess County, Inc. ("Royal Carting") is a corporation organized under the laws of the State of New York. Royal Carting provides residential garbage collection services, commercial waste removal services, and recycling services to communities in the Hudson Valley, New York. Its administrative offices are located in Hopewell Junction, New York. The founder and owner of Royal Carting is Emil Panichi. Royal Carting is currently operated by Emil Panichi's daughters, Elisa Popovich and Respondent Evelyn Panichi. Respondent Evelyn Panichi manages Royal Carting's operations. She also serves as Royal Carting's human resources officer. She has authority to hire and fire employees.

Charging Party Donna Halpin is 68-year-old woman who was formerly employed by Royal Carting as a secretary in its administrative offices. Ms. Halpin was employed by Royal Carting as a secretary for approximately twenty-six years, since 1995. As a secretary, Ms. Halpin's major job duties included: (1) data entry, which involved entering information for new accounts, cancelling accounts, and updating account information; (2) answering telephones and responding to customer inquiries; and (3) preparing weekly reports tracking the gains/losses on residential accounts. Until February 2021, Ms. Halpin was employed full-time and worked from a desk on the second floor of Royal Carting's administrative offices, where all other secretaries were also located.

Equal Employment Opportunity Commission
New York District Office
Received   8/30/2021

**Charge# 520-2021-04531**

In approximately 2018, Betty Guarino became Royal Carting's office manager. Ms. Guarino was verbally abusive towards Ms. Halpin. In approximately 2019, Ms. Halpin had to ask Ms. Guarino a question and so went to her desk. In response to her question, Ms. Guarino sneered at Ms. Halpin and told her to go back to her seat. Several minutes later, when Ms. Halpin had to deliver a document to the desk of another employee, Ms. Guarino walked into the room and asked Ms. Halpin if she had "attention deficit disorder." In April 2020, Ms. Guarino rudely ordered Ms. Halpin to "sit in your chair" and told Ms. Halpin that she did not want to "hear a peep" out of Ms. Halpin's mouth. Ms. Halpin reported Ms. Guarino's behavior to Respondent Panichi.

In early 2020, Mr. Panichi's daughters, Elisa Popovich and Respondent Evelyn Panichi, were put in charge of operating the business. In January 2021, Royal Carting hired a woman named Vanessa Doughty as a secretary. Ms. Doughty is significantly younger than Ms. Halpin. Ms. Halpin estimates that Ms. Doughty is in her 30s. After Ms. Doughty was hired, Respondents began training Ms. Doughty how to perform Ms. Halpin's job duties.

On February 3, 2021, Ms. Halpin returned to her desk from lunch to find that numerous documents she had been working on were missing. Ms. Halpin asked Ms. Guarino about her belongings and was told that Ms. Guarino had given the documents to another secretary, Ms. Guarino's daughter, to "check."

Shortly thereafter, Ms. Halpin spoke with Respondent Panichi about the missing documents. Respondent Panichi told Ms. Halpin that "we had noticed" Ms. Halpin's work was "not up to par" and that and Ms. Halpin seemed "tired." Respondent Panichi told Ms. Halpin that, because of this, Ms. Halpin would thereafter be offered only a part-time schedule, under which Ms. Halpin would work from 9:00 a.m. to 1:00 p.m. Ms. Halpin understood that she would lose her health insurance and paid vacations/sick leave under this schedule because, pursuant to Royal Carting policy, an employee had to work a minimum of 30 hours per week to receive health insurance, paid vacation,

Equal Employment Opportunity Commission
New York District Office
Received   8/30/2021

and paid sick leave. In addition, Respondent Panichi informed Ms. Halpin that, under the new schedule, Ms. Halpin would have to give up the desk she had worked at for years and relocate to the first floor of the building.

Before this conversation, Ms. Halpin had not received any notice or evaluation informing her that her work was "not up to par." None of Ms. Halpin's supervisors had ever complained to Ms. Halpin about the quality of her work. After being given the ultimatum about her new schedule, Ms. Halpin told Respondent Panichi that she would have to consider whether it would be possible for her to continue working with such reduced pay and benefits.

Ms. Halpin determined she could not financially afford to accept the lower hours as doing so would have: (1) required Ms. Halpin to accept a pay cut of approximately $500 per week; (2) resulted in the loss of Ms. Halpin's employer-provided health insurance; and (3) required Ms. Halpin to apply for and start paying her share of Medicare Part B and a prescription drug plan. That evening, Ms. Halpin texted Respondent Panichi and told her that the "offer" to cut her hours and move downstairs was "not beneficial to [Ms. Halpin] at all" and that Ms. Halpin "wished she had been told" that Respondents felt her work was not up to par "after working there for 25 years."

The next day, on February 4, 2021, Respondent Panichi called Ms. Halpin into a conference room to meet with her, Ms. Guarino, and Ms. Popovich. Respondent Panichi told Ms. Halpin that she understood that Ms. Halpin was "not interested" in the reduced hours. Ms. Halpin responded that she would "lose everything" and could not do her job under the reduced schedule because all the documents and information she needed were located on the second floor of the office. Respondent Panichi responded that Ms. Halpin would not have to worry about that because her job duties would also be reduced—no longer would Ms. Halpin have any responsibility for data entry or preparing reports. Instead, her sole duties would be to answer the phones and transfer calls to other secretaries.

3

Equal Employment Opportunity Commission
New York District Office
Received   8/30/2021

Charge# 520-2021-04531

Respondent Panichi made clear to Ms. Halpin that her only option to remain employed at Royal Carting was to accept the reduced hours, reduced job duties, and the humiliating relocation to the first floor. After Ms. Halpin reiterated that she would not be able to accept the financial burden of the reduced schedule, Respondent Panichi told Ms. Halpin, "well, that's ok." Respondent Panichi then informed Ms. Halpin that Respondents would pay out Ms. Halpin's earned vacation days, thus making clear that Ms. Halpin's employment at Royal Carting was over.

Ms. Halpin, who had never received a performance evaluation or any written feedback of her work, asked Respondent Panichi to give her any performance evaluations of her work showing how and why her work was "not up to par." Royal Carting's employee handbook states that Royal Carting's policy is to provide employees formal and informal feedback about their job performance and to perform annual performance evaluations. Respondent Panichi informed Ms. Halpin that, contrary to Company policy set forth in its employee manual, no such performance evaluations had been prepared for Ms. Halpin.

It is apparent from Respondents' hiring of a younger employee to perform Ms. Halpin's job duties, the baseless insinuation that Ms. Halpin's job performance was "not up to par" because she was "tired," Respondents' failure to record how Ms. Halpin's job performance was deficient in contravention of Royal Carting's own policies, the drastic cut to Ms. Halpin's hours, and the humiliating relocation of Ms. Halpin to the first floor away from all of her peers, that Respondents intended to push Ms. Halpin out of the company because of her age. After her termination, Ms. Halpin learned from her former co-workers that Ms. Doughty had taken her desk and was performing all of Ms. Halpin's duties. To be clear, before Respondents hired Ms. Doughty, there were no issues with Ms. Halpin's performance. The vague and undocumented assertion that Ms. Halpin's job performance was not "up to par" is completely baseless

Mr. Rayan is represented in this matter by Lucas C. Buzzard of Joseph & Kirschenbaum LLP,

Equal Employment Opportunity Commission
New York District Office
Received   8/30/2021

**Charge# 520-2021-04531**

32 Broadway, Suite 601, New York, NY 10004, (212) 688-5640, lucas@jk-llp.com.

5

Equal Employment Opportunity Commission
New York District Office
Received   8/30/2021